[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
{¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3.
{¶ 2} Following a jury trial, defendant-appellant Allen Kirk Higgins was convicted of aggravated robbery, in violation of R.C.2911.01(A)(1). Higgins now appeals, raising six assignments of error, none of which we find to be well taken.
{¶ 3} In his first and second assignments of error, Higgins challenges his conviction on both the sufficiency and the weight of the evidence. In the review of a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt.[1] A conviction will not disturbed on appeal unless we determine that reasonable minds could not reach the conclusion reached by the trier of fact.[2] In determining whether a conviction was against the manifest weight of the evidence, we must review all of the evidence to determine whether the trier of fact lost its way and created a manifest miscarriage of justice.[3]
{¶ 4} In this case, Higgins, as a complicitor, was convicted of aggravated robbery under R.C. 2911.01(A)(1), which states that "[n]o person, in attempting or committing a theft offense * * *, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
{¶ 5} To support a conviction for Higgins's complicity in the offense, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."[4] "[P]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed."[5]
{¶ 6} During the trial, the state presented evidence that Higgins had borrowed his sister's van and had allowed Tommy Flowers to sit in the driver's seat of the van as it was parked on the street. The victim had approached the van to ask if Flowers wanted to buy a ring from him. The victim testified that Flowers, Higgins and a third man, later identified as Iowa Thornton, were sitting in the van talking and listening to music.
{¶ 7} Flowers told the victim to stop standing in the street, so the victim walked to the van's passenger side. Thornton was in the front passenger seat, and Higgins was in the rear seat behind Thornton. Higgins got out of the van, and Flowers told the victim to get into the van. The victim entered the van through its side door and sat behind Thornton.
{¶ 8} The victim allowed Flowers to inspect his ring. Higgins, who was then outside the van, told the victim to move over so that he could re-enter the van. The victim moved behind the driver's seat and Higgins sat behind Thornton, effectively blocking the victim's exit through the van's side door.
{¶ 9} Flowers asked the victim to let him look at his necklace. The victim told Flowers that he did not want to sell it and demanded it back. The victim told the three men, "I need my chain, man. I just, you know, I don't feel safe with all three of you all being in here without me having my chain back." Then Flowers turned around and pointed a gun at the victim and told him to get out of the van. Neither Higgins nor Thornton looked surprised or moved away. The victim struggled with Flowers for the gun. During the struggle, the gun fired, and a bullet struck Thornton in the leg.
{¶ 10} The victim wrested the gun from Flowers. As Flowers and Higgins ran away, the victim chased Flowers, but was unable to catch him. The victim then walked to a busy intersection with the gun in hand, because he knew that police officers frequently drove there, and that he would be able to report the crime to them.
{¶ 11} As the victim was walking, he noticed that the van in which he had encountered the three men was approaching him. Higgins was driving the van. Higgins leaned out the window and repeatedly asked for the gun back. Higgins offered the victim money for the weapon. The victim refused to give the gun to Higgins.
{¶ 12} Then the victim flagged down a passing police cruiser and reported the crime. The police were able to subdue Higgins after a brief foot pursuit. Following his arrest, Higgins gave police varying accounts of the offense.
{¶ 13} In State v. Watson,[6] this court held that even though the defendant was a passenger in a van being pursued during a high-speed police chase, and even though he did not steer the van into a second car, the defendant was an accomplice to those acts. We held that the defendant was properly convicted of aggravated robbery for causing serious physical harm to the driver of the second car because the defendant had participated in a series of robberies, fled from the crime scene with his partner, and would have benefited had his partner escaped.[7]
{¶ 14} In this case, Higgins had told the victim to move to the rear seat farthest from the van's side exit and got into the seat next to him, thereby barring, in effect, the victim's means of escape. Higgins did nothing as Flowers pulled a gun on the victim, and following the shooting, he attempted to recover the weapon from the victim. Higgins ran from the scene when the police arrived. Higgins would have benefited had he been successful in retrieving the gun from the victim or in running from police. Viewing the evidence in a light most favorable to the state, we hold that there was substantial evidence upon which the jury could have concluded that all of the elements of the charged offense had been proved beyond a reasonable doubt.[8] Furthermore, we cannot say that the jury lost its way in finding Higgins guilty, as a complicitor, of aggravated robbery. Therefore, we overrule Higgins's first and second assignments of error.
{¶ 15} In his third assignment of error, Higgins complains that the trial court erred by overruling his Batson challenges to the state's use of peremptory challenges to exclude two African-American jurors from the panel.[9] We will not disturb a trial court's determination that there was no discriminatory intent in the state's use of its peremptory challenges unless it was clearly erroneous.[10] The state excused one prospective juror because a family member was a case manager with the court clinic and would have had regular dealings with criminal defendants. The state excused a second juror who was an attorney because other jurors might have given her opinions greater weight and deference during deliberations. Because the state offered race-neutral explanations for its peremptory challenges, the trial court did not err in overruling Higgins's Batson challenges.[11]
{¶ 16} In his fourth assignment of error, Higgins argues that the trial court erred by denying his motion to suppress statements that he had made to police. We disagree. The totality of the circumstances surrounding Higgins's interviews with police failed to demonstrate that his statements were made involuntarily or that police had used inherently coercive tactics to obtain the statements.[12] Police officers had advised Higgins of his Miranda rights both orally and in writing. Officers testified that Higgins appeared to understand his rights, and that he did not appear to be intoxicated or groggy at the time. Moreover, Higgins executed a notification-of-rights form indicating that he understood his rights. Therefore, we overrule the fourth assignment of error.
{¶ 17} In his fifth assignment of error, Higgins contends that the trial court committed plain error by examining a witness called by the state in order to inquire about venue and identification. "An alleged error `does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise.'"[13]
{¶ 18} Evid.R. 614(B) provides that a trial court may interrogate witnesses in an impartial manner, whether called by itself or by a party. "In absence of any showing of bias, prejudice or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain material fact or to develop truth."[14] A trial court's questioning of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant.[15] In this case, the witness could have answered the court's questions either by failing to identify Higgins or by indicating that the crime did not occur in Hamilton County. Moreover, the state established identification and venue through at least one other witness. We hold that the trial court's questioning of the witness was not error. We overrule the fifth assignment of error.
{¶ 19} In his sixth assignment of error, Higgins claims that the trial court erred by allowing a state's witness to vouch for the credibility of another witness. Higgins argues that the court should not have allowed a police officer to testify that the victim's statements to police had been "consistent," and that the defendant had lied to police. We agree that there was an error in this respect. The credibility of a witness is exclusively for the trier of fact.[16] So it is improper for a witness to vouch for the credibility of a victim's account of an incident.[17] In this case, the trial court should not have allowed the state's witness to vouch for the credibility of the victim. The jury should have been left to draw its own conclusions from the fact that Higgins had given such widely varying statements to police. But because the improperly admitted evidence was cumulative of other properly admitted evidence and did not serve to deprive Higgins of a fair trial, there was no prejudice, and we overrule the final assignment of error.[18]
{¶ 20} Accordingly, the judgment of the trial court is affirmed.
{¶ 21} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
 Sundermann, P.J., Doan and Winkler, JJ.
[1] See State v. Jones, 90 Ohio St.3d 403, 417, 2000-Ohio-187, 73 N.E.2d 300; State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[2] Id.
[3] See State v. Thompkins, supra, at 387, 1997-Ohio-52,678 N.E.2d 541.
[4] State v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus.
[5] Id at 245, 2001-Ohio-1336, 754 N.E.2d 796, citing State v.Pruett (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884.
[6] State v. Watson, 1st Dist No. C-010691, 2002-Ohio-4046.
[7] Id.
[8] See State v. Waddy (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.
[9] See Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712.
[10] See State v. Hernandez (1992), 63 Ohio St.3d 577, 583,589 N.E.2d 1310.
[11] See State v. Watson, supra.
[12] See In re Watson (1989), 47 Ohio St.3d 86, 90, 548 N.E.2d 210;State v. Twyford, 94 Ohio St.3d 340, 2002-Ohio-894, 763 N.E.2d 122.
[13] State v. Baston, 85 Ohio St.3d 418, 1999-Ohio-280, 709 N.E.2d 128, citing State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
[14] State v. Baston, 85 Ohio St.3d at 426, 1999-Ohio-280,709 N.E.2d 128, citing Jenkins v. Clark (1982), 7 Ohio App.3d 93, 98,454 N.E.2d 541, 548.
[15] State v. Blankenship (1995), 102 Ohio App.3d 534, 548,657 N.E.2d 559.
[16] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[17] See, e.g., State v. Hart, 8th Dist. No. 79564, 2002-Ohio-1084.
[18] See, e.g., State v. Wedge (Dec. 21, 2001), 1st Dist. No. C-00747.